# UNITED STATES EX REL. NEWCOMB MOTOR COMPANY *v.* MOORE.

---

PATENTS; INTERFERENCES; APPEALS; DELEGABLE DUTIES; FORMER ADJUDICATION; MANDAMUS.

1. As the right of a party to make a claim goes to the foundation of an interference, a judgment of the Primary Examiner denying that right may be reviewed by this court; and the court will take jurisdiction to determine that question as an ancillary one to be considered in awarding priority of invention (Following *Podlesak* v. *McInnerney*, 26 App. D. C. 399; and distinquishing *Allen* v. *United States*, 26 App. D. C. 8,

s.c. 203 U. S. 476, 51 L. ed. 281, 27 Sup. Ct. Rep. 141, and *Union Distilling Co.* v. *Schneider,* 29 App. D. C. 1.)

2. Under sec. 4904, U. S. Rev. Stat., U. S. Comp. Stat. 1901, p. 3389, providing that whenever, "in the opinion of the Commissioner," an interference exists, he shall give notice to the applicants, and direct the Primary Examiner to determine the question of priority of invention, the duty of the Commissioner to determine whether an interference exists may be delegated to the Primary Examiner, the demands of the statute being met by other provisions whereby at some stage of the proceedings the personal opinion of the Commissioner may be had by either party. (Following *Allen* v. *United States,* 26 App. D. C. 8.)

3. The provisions of secs. 4909–4911, U. S. Rev. Stat., U. S. Comp. Stat. 1901, pp. 3390, 3391, giving every applicant for a patent the right to have his claim twice rejected by the Primary Examiner, apply only to *ex parte* cases, where the rejection following the first consideration has not afforded the applicant opportunity for hearing and argument. (Following *Allen* v. *United States,* 26 App. D. C. 8.) They do not confer upon an applicant whose right to make a claim has been denied in an *inter partes* proceeding the privilege of contesting that question *ex parte,* after the adverse *inter partes* decision has been rendered.

4. The jurisdiction of the Commissioner of Patents attaches when he directs the declaration of an interference, and he still retains jurisdiction to award priority to the successful party after his adversary has been eliminated. The remedy of the unsuccessful party is by way of appeal. He has no right to thereafter prosecute the claims of the issue in an *ex. parte* proceeding.

5. Where the Primary Examiner dissolves an interference on the ground that certain of the parties have no right to make the claims of the issue, and appeals from his decision are abandoned, his decision is a final adjudication as between the parties to the interference; and thereafter the Commissioner is without authority to direct the Primary Examiner to readjudicate, upon the *ex parte* applications of the defeated parties, the question whether they had the right to make the identical claims of the issue in the interference proceeding; and mandamus will lie at the instance of the successful party to compel the Commissioner to vacate all proceedings subsequent to the dissolution of the interference. (Following *Blackford* v. *Wilder,* 28 App. D. C. 551.)

6. In a mandamus proceeding against the Commissioner of Patents to compel him to vacate certain proceedings in the Patent Office affecting the right of the relator to a patent, it is no answer to the petition that the Commissioner deemed himself possessed of the authority he exercised, if no discretion in the premises was committed to him and he was in fact acting beyond his authority and without warrant

Vol. XXX.—30.

of law. (Following *United States ex rel. Daly* v. *Macfarland,* 28 App. D. C. 552, and *Garfield* v. *United States,* 30 App. D. C. 165, and distinguishing *Seymour* v. *United States,* 10 App. D. C. 567.)

No. 1820. Submitted January 8, 1908. Decided March 3, 1908.

HEARING on an appeal by the relator from a judgment of the Supreme Court of the District of Columbia dismissing a petition for a writ of mandamus against the Commissioner of Patents.                                                        *Reversed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from an order of the supreme court of the District of Columbia dismissing a petition for a writ of mandamus to compel the Commissioner of Patents to enforce a former decision made in the Patent Office and to vacate certain proceedings thereafter had, involving what is claimed to be the same subject-matter.

The facts, about which there is no controversy, are these: On July 15, 1902, two patents were regularly issued to E. C. Newcomb, one for an apparatus for generating steam, and the other for the method of generating steam. Both were subsequently assigned to the relator, the Newcomb Motor Company. Newcomb's original application was filed June 7, 1901, and subsequently divided. Prior to this, on August 2, 1897, Elihu Thompson had filed an application for an apparatus for regulating and controlling steam production. No interference was declared between this and Newcomb's applications. After the issue of Newcomb's patent's, Thompson inserted in his application forty-seven claims copied from Newcomb's method patent, and demanded an interference. Thereafter, on November 17, 1902, Thompson filed a divisional application setting up the same method claims, and at the same time canceled said claims in his original application. February 28, 1900, Herman Lemp filed an application for automatic regulation of steam-propelled vehicles; and on November 3, 1902, another for the method of producing steam. Both

of these have been assigned to the General Electric Company. December 30, 1902, an interference was declared between Lemp's last application and the Newcomb patent No. 704,908 (method), involving an issue of fifteen counts. These counts consisted of fifteen claims of the Newcomb patent that were not claimed in Lemp's application as filed, but were added thereto after Newcomb's patent had issued. A second interference was declared January 13, 1903, between Lemp's first application and Newcomb's patent No. 704,907. The twenty-one counts of this issue were claims of the Newcomb patent not claimed by Lemp until after the issue of the Newcomb patent. January 13, 1903, an interference was declared between Thompson's divisional application and Newcomb's patent, the forty-seven counts of the issue constituting the claims taken from Newcomb's patent. Another was declared January 27, 1903, between Thompson's original application and Newcomb's patent No. 704,907. The issue in this contained forty-eight counts embracing forty-eight claims of the Newcomb patent not in Thompson's original application, but inserted by him after the issue of the Newcomb patent aforesaid. Thereafter Newcomb filed in each case a motion, under rule 122, to dissolve the interferences. Several grounds were assigned, the substantial one in each case being that the opposing party had no right under his application to make the claims in interference. The Primary Examiner, to whom the motions were referred under the rule, on January 11, 1904, made a decision in each case that the applicants had no right to make the claims, and thereafter dissolved the interferences. The limit of appeal from each decision was ordered to expire February 4, 1904. Lemp and Thompson filed motions before the Primary Examiner, asking him to cancel the limit of appeal as contrary to law, because they were entitled to a second rejection of their claims; that after-proceedings in the interferences be suspended pending the motions; and that they be given thirty days within which to file affidavits regarding the right to make the claims. By stipulation the limit of appeal had been extended sixteen days, namely, to February 20, 1904. On that date the Examiner denied the

motions.   On the same day Lemp and Thompson entered appeals
to the Examiners-in-Chief from the decisions dissolving the
interferences, asking that hearings thereof be postponed until
a decision by the Commissioner on appeals taken directly to
the Commissioner from the decisions of the Examiner refusing
to extend the limit of appeal.   On March 11, 1904, the Com-
missioner affirmed the decisions denying the motions to extend
the limit of appeal.   September 28, 1904, the Commissioner
denied motions for rehearing.   Pending the above proceedings,
on June 3 and 7, 1904, Thompson and Lemp petitioned the
Commissioner to remand their applications to the Primary
Examiner, with instructions to reject or allow the same.   This
petition was denied.   On October 5 and 6, 1904, Thompson and
Lemp, "in view of the Commissioner's decision" of September
28, 1904, withdrew their several appeals to the Examiners-in-
Chief from the decisions of the Primary Examiner dissolving
the interferences.   After the withdrawal of these appeals,
Thompson and Lemp proceeded *ex parte* before the Primary
Examiner,—Newcomb having no knowledge thereof,—and
demanded action on the same claims, their right to make which
had been denied on the motions to dissolve.   November 3, 1904,
the claims were rejected.   Both parties thereafter asked the re-
consideration of their several demands, and filed affidavits re-
lating to the construction of the applications and   claims.
Thompson's application was a second time rejected on May 10,
1905, and he appealed in each case to the Examiners-in-Chief.
Lemp pursued the same course, and was a second time rejected
on November 20, 1905, and likewise appealed to the Examin-
ers-in-Chief.   On July 13, 1905, on Thompson's *ex parte* ap-
peal the Examiners-in-Chief reversed the Primary Examiner
as to all but two of the claims involved.   On Lemp's *ex parte*
appeal they on January 25, 1906, reversed the Primary Ex-
aminer as to all of the claims involved.   After these last two
decisions the Examiner of Interferences reinstated the former
interferences, redeclaring them as before, with the exception
of the two counts which the Examiners-in-Chief had held were
rightly denied.   Before noticing this second declaration, New-

comb moved to dissolve on the ground that the subject-matter was *res judicata.* The Examiner denied the motions, and Newcomb appealed to the Commissioner. On this appeal the Commissioner, on April 24, 1906, reversed the decision reinstating the interferences, and directed it to be vacated; but also ordered that the Primary Examiner's decision rejecting the claims be considered in full force and effect until the Examiner of Interferences should be convinced that the same was an error or until the same was overruled by an *inter partes* appeal; and further ordered that the Primary Examiner should fix a date for reconsideration of the rejection *inter partes,* and, if still convinced that the rejection was sound, to make the same final and fix a limit of appeal. On May 23, 1906, Thompson and Lemp each asked that a day be set for the rehearing provided in said decision. Hearing was set for July 9, 1906, and notices were sent to Newcomb, but the same was postponed to September 26, 1906. Meantime the Examiner of Interferences had, on June 11, 1906, set aside the declarations of interferences in obedience to the opinion of the decision of the Commissioner. On August 15, 1906, the Newcomb Motor Company filed the petition setting up the proceedings in the Patent Office before stated, and averring that the only remedy which Thompson and Lemp had in relation to the decisions of the Primary Examiner dissolving the interferences was by appeal to the Examiners-in-Chief pursuant to the provisions of secs. 4909 and 483, Rev. Stat. U. S. Comp. Stat. 1901, pp. 3390, 272, and the rules of the Patent Office established in accordance therewith; that, having taken and then abandoned appeals therefrom, the said decisions of the Primary Examiner had become final and the issues therein are *res judicata* between the parties; and that by the refusal of the Commissioner to vacate all of the proceedings connected with and leading to a redeclaration of the interferences, and particularly the *ex parte* actions of the said Thompson and Lemp subsequent to the dissolution of the said interferences, and any and all appeals therein, petitioner had been deprived of the legal rights vested in him by the laws relating to the granting of patents, and will be without redress unless the writ of mandamus prayed for be granted.

*Mr Charles H. Duell, Mr. Robert N. Kenyon* and *Mr. Walter F. Rogers* for the appellant.

*Mr. Frederick A. Tennant* and *Mr. Melville Church* for the appellee the Commissioner of Patents.

*Mr. Albert G. Davis,* by leave of the Court, filed a brief on behalf of the General Electric Company.

Mr. Justice ROBB delivered the opinion of the Court:

It is conceded in the brief of counsel for appellee that "the judgments of the Primary Examiner, unappealed from, were as final as would have been the judgments of the Examiners-in-Chief on appeal, or of the Commissioner on appeal, had appeals been taken to those tribunals;" but it is contended that the judgment of the Primary Examiner dissolving the interferences on the ground that neither Thompson nor Lemp had the right to make the claims was an interlocutory, and not a final, judgment, because it did not decide the question of priority. It is true, as contended by appellee, that in several cases decided by this court prior to *Podlesak* v. *McInnerney,* 26 App. D. C. 399, it was in effect held that in interference cases the right of either party to make the claims of the issue, except under extraordinary circumstances, would not be considered. In the *Podlesak Case,* however, upon careful consideration we modified our earlier views, and ruled that, inasmuch as the right of a party to make a claim goes to the foundation of an interference, a judgment of the Primary Examiner denying that right might be appealed to this court, and that we would take jurisdiction to determine that question "as an ancillary question to be considered in awarding priority of invention." The opinion states: "If it be incorrectly held that such party has a right to make the claim, priority may be awarded to him, and his adversary be deprived of a substantial right in that he is not given a claim where he necessarily is the prior inventor, his adversary never having made the invention." *Allen* v. *United States ex rel. Lowry,* 26 App. D. C. 8, relied upon by

appellee, in no way conflicts with the decision in the *Podlesak Case*. Lowry, one of the parties to the interference, was granted a patent, and an interference was subsequently declared between his patent and the application of one Spoon. Lowry moved to dissolve the interference upon the ground that Spoon's press was inoperative, and therefore that Spoon had no right to make the claims in issue. The Primary Examiner granted the motion, and an appeal was prosecuted to the Examiners-in-Chief, who affirmed the decision. Spoon thereupon petitioned the Commissioner of Patents, who remanded the case to the Primary Examiner for further consideration, and that officer, upon the filing of additional affidavits, decided that Spoon had a right to make the claims in issue. An appeal was taken to the Board of Examiners-in-Chief, which was dismissed by that Board for the want of jurisdiction. Lowry then petitioned the Commissioner to take jurisdicton of the appeal, whch petition was denied. The supreme court of the District of Columbia was then petitioned to issue a writ of mandamus commanding the Commissioner of Patents to direct the Examiners-in-Chief to reinstate and take jurisdiction of the appeal, and the petition was granted. This court, on appeal, reversed the lower court, and our ruling was affirmed by the Supreme Court of the United States (203 U. S. 476, 51 L. ed. 281, 27 Sup. Ct. Rep. 141) the ground of both decisions being that appeals are only allowed to the Examiners-in-Chief, and from them to the Commissioner, from "final decisions, and not such as are made in interlocutory matters." The Supreme Court quoted with approval the following from the decision of the Acting Commissioner: "It is to be particularly noted that there has been no decision as to the rival claims of the parties to this interference. It has not been decided which party is entitled to the patent. If it should at any time be decided that Spoon is entitled to the patent, Lowry will have the right of appeal, but until such final decision is rendered the statute gives him no right of appeal. It would seem upon general principles of law that Lowry could then present for determination by his appeal any question which in his opinion vitally affects the question which party is entitled to the pat-

ent.   The only ground upon which he can reasonably claim the right of appeal on this motion is that the question vitally affects his claimed right to a patent, and if it does that, he can raise it at final hearing and contest it before the various appellate tribunals, including the court of appeals."   It is obvious that the decision of the Primary Examiner in the *Lowry Case* was· purely interlocutory, for it eliminated neither party to the interference, and deferred final judgment on the question of priority until each party had taken testimony.   It was still possible, therefore, for Lowry to prevail on the merits and receive the award of priority.   Neither does the case of *Union Distilling Co.* v. *Schneider,* 29 App. D. C. 1, conflict with *Podlesak* v. *McInnerney,* for the reason that the appeal in that case was taken to this court before the subject-matter in dispute had been awarded to either party.

It is further contended that because sec. 4904, Rev. Stat., provides that whenever "in the opinion of the Commissioner" an interference exists, notice shall be given the parties, etc., a nondelegable duty is imposed upon the Commissioner.   This question was considered in *Allen* v. *United States, supra,* and it was there held that the Commissioner, "for any reason which he considers may be in the interest of the public or the parties," may delegate to the Primary Examiner the duty of determining primarily whether an interference in fact exists, and that "in so doing he is not thereby depriving any party of any statutory right to have all questions passed upon at final hearing, and on appeals therefrom, which are necessary for a correct determination of the question of priority, which is the sole question for which interferences are declared."   To adopt the view of the appellee would reverse a practice which has prevailed in the Patent Office since the statute was enacted in 1870, and would in effect render the statute nugatory, since it would be a physical impossibility for the Commissioner personally to pass upon all these preliminary questions.   He was given assistants for that purpose.   Moreover, the Primary Examiner is skilled in the particular art, and therefore peculiarly qualified to pass upon a question involving the right of either party to make the

claims of the issue. We think the demands of the statute fully met when it is provided that at some stage in the proceedings the personal opinion of the Commissioner may be invoked by either party.

It is next contended by the appellee that the judgment of the Primary Examiner was not a final judgment because, under the provisions of secs. 4909–4911, Rev. Stat. U. S. Comp. Stat. 1901, pp. 3390, 3391, the applicant is entitled to a reconsideration and second rejection of his claims by the Primary Examiner. These sections read as follows:

"Sec. 4909. Every applicant for a patent or for the reissue of a patent, any of the claims of which have been twice rejected, and every party to an interference, may appeal from the decision of the Primary Examiner, or of the Examiner in charge of interferences in such case, to the Board of Examiners-in-Chief; having once paid the fee for such appeal.

"Sec. 4910. If such party is dissatisfied with the decision of the Examiners-in-Chief, he may, on payment of the fee prescribed, appeal to the Commissioner in person.

"Sec. 4911. If such party, except a party to an interference, is dissatisfied with the decision of the Commissioner, he may appeal to the supreme court of the District of Columbia, sitting in banc."

It will be necessary to examine secs. 4903 and 4904, Rev. Stat. U. S. Comp. Stat. 1901, p. 3389, in discussing the merits of this contention. These sections read as follows:

"Sec. 4903. Whenever, on examination, any claim for a patent is rejected, the Commissioner shall notify the applicant thereof, giving him briefly the reasons for such rejection, together with such information and references as may be useful in judging of the propriety of renewing his application or of altering his specification; and if, after receiving such notice, the applicant persists in his claim for a patent, with or without altering his specifications, the Commissioner shall order a re-examination of the case.

"Sec. 4904. Whenever an application is made for a patent which, in the opinion of the Commissioner, would interfere

with any pending application, or with any unexpired patent, he shall give notice thereof to the applicants, or applicant and patentee, as the case may be, and shall direct the Primary Examiner to proceed to determine the question of priority of invention. And the Commissioner may issue a patent to the party who is adjudged the prior inventor, unless the adverse party appeals from the decision of the Primary Examiner, or of the Board of Examiners-in-Chief, as the case may be, within such time, not less than twenty days, as the Commissioner shall prescribe."

In *Allen* v. *United States, supra,* sec. 4909 was construed "as though it read, every applicant for a patent, or for the reissue of a patent, any of the claims of which have been twice rejected, may appeal from the decision of the Primary Examiner, and every party to an interference may appeal from the decision of the Examiner in charge of interferences in such case, to the Board of Examiners-in-Chief. In other words, to abbreviate and make the section more succinct, the words 'may appeal from the decision' were used but once, but we think that thereby clearness was sacrificed for brevity." This interpretation negatives the contention of appellee that the provision giving an applicant the right to have his claim twice rejected applies in *inter partes* cases. In an *ex parte* case arising under sec. 4903 the applicant in the first instance has no knowledge as to the references and reasons of the rejection by the Primary Examiner of his claim, and has no opportunity to be heard before action has been taken by that official. The notice of rejection contains his first information of what has taken place in the Patent Office. The statute therefore very properly provides in effect that upon the receipt of such notice the applicant may have an opportunity to meet the objections raised by the Primary Examiner. Under sec. 4904, however, it is made the duty of the Commissioner to give notice to parties thought to be in interference, and to "direct the Primary Examiner to proceed to determine the question of priority of invention." The statute therefore imposes upon the Commissioner the duty of notifying the parties prior to the first hearing before the Pri-

mary Examiner so that, when the hearing is had, both parties have a right to be present, and, in the event a motion for dissolution is made, the applicant affected has knowledge of the grounds for the motion, and ample opportunity for hearing and argument. No more reason exists for a second hearing than exists for a second hearing in any other case between two parties litigant where due notice has been given and all the forms and requirements of the law have been complied with. The Commissioner in his opinion said: "I am of the opinion that the proceedings in the Thompson application since the withdrawal of the appeal to the Examiners-in-Chief in the interference were contrary to the evident spirit of the rules, and that to sustain such proceedings would be in opposition to the requirements of good practice and to the interests of applicants generally. If parties can waive their rights of *inter partes* appeal in the interference, and then proceed by *ex parte* appeals to try the same questions which they could have tried by the *inter partes* appeals, the provision of rule 124, that appeals shall be heard *inter partes,* is rendered ineffective. If the *inter partes* hearing upon appeal is to be escaped, the usefulness of motions for dissolution will be slight, except in those cases where parties voluntarily take the *inter partes* appeal. Why should motions be brought, or even permitted, if decisions granting them can be set aside upon appeal without opportunity for the moving parties to be heard, and, presumably to a large extent, without consideration of the arguments upon which the conclusions appealed from are based? It is no sufficient answer to say that if the decision of the Primary Examiner is reversed, the motion may be brought again when the interference is reinstated or redeclared; if reinstated, a new motion brought and granted would presumably be followed by another *ex parte* appeal and another reversal of the decision. There would be no logical conclusion to such proceedings, and to permit them would be absurd. The practice of permitting motions for dissolution to be brought is believed to be good. If appeals upon these motions are to be permitted, the prosecution thereof must be *inter partes,* to save the whole proceedings

upon the motion from becoming farcical. The rules at present do provide for appeals, and it is not deemed expedient to change them in this respect at the present time."

We conclude, therefore, that the provisions relating to *ex parte* applications do not apply to *inter partes* actions, and that when the appeal from the decision of the Primary Examiner was abandoned, his decision became final and binding upon the parties.

But it is insisted that mandamus is not the proper remedy. When the decision of the Primary Examiner that Thompson and Lemp had no right to make the claims in issue became final and *res judicata,* those parties were eliminated from the case, and appellant was entitled to go hence in the full and uninterrupted enjoyment of the patent. Under the statute, the jurisdiction of the Commissioner attaches when he directs the declaration of an interference, and he still retains jurisdiction to award priority to the successful party after his adversary has been eliminated. It would indeed be an anomalous situation, if his determination that one party to an interference has no right to make the claims in issue, and therefore is not entitled to a judgment of priority, operates to deprive him of jurisdiction to award priority to the other party, who has the right to make the claims in issue, and who is entitled to an award of priority. The remedy of the defeated party is by way of appeal. He has no right whatever thereafter to prosecute the claims of the issue in an *ex parte* case. It follows, therefore, that when Thompson and Lemp abandoned their appeals from the decision of the Primary Examiner denying their right to make the claims in issue, that decision became final and *res judicata* as between the parties to the interference, and that thereafter the Commissioner was without authority to direct the Primary Examiner to readjudicate, in Thompson's and Lemp's *ex parte* applications, the question whether they had the right to make the identical claims of the issue in the interference proceeding. If this remedy is denied it, appellant will be again compelled to litigate with Thompson and Lemp in the Patent Office the same question which we have held has already been finally de-

termined in its favor. All this will involve expense, delay, and loss. The Commissioner, being without authority to direct a readjudication of the question involved in the former interference, has no discretion in the premises, for "whether the former decision was right or wrong, or was induced by the want of the particular evidence that was offered in the present case, is not the question. However that might be, it was final and put an end to the litigation in the first interference." *Blackford* v. *Wilder,* 28 App. D. C. 551.

It is no answer to the petition of appellant, that the Commissioner deemed himself possessed of the authority he exercised, if no discretion in the premises was committed to him and he was in fact acting beyond his authority and without warrant of law. *Garfield* v. *United States,* 30 App. D. C. 177; *United States ex rel. Daly* v. *Macfarland,* 28 App. D. C. 552.

*Seymour* v. *United States,* 10 App. D. C. 567, confidently relied upon by appellee to defeat appellant's right to the writ, is not in point. That case, like this, involved an interference between an application and unexpired patent, but in that case the decision dissolving the interference had been acquiesced in by the junior party, leaving the senior party in full possession and enjoyment of his patent. This court very naturally held that the patentee was not entitled to a writ of mandamus to compel the Commissioner of Patents to reinstate the interference proceeding, because he had suffered no legal injury whatever, and because he remained "in full possession of all his legal rights to the same extent as before he was summoned to defend those rights."

In the instant case a second attack, not authorized by law, has been instituted against appellant's patent, and necessarily has impaired that patent. There being no other adequate and speedy remedy, we think appellant entitled to the relief sought.

The judgment of the court below must be reversed, and the cause remanded to that court, with directions to issue the writ as prayed.                                      *Reversed.*

A writ of error to the Supreme Court of the United States was allowed March 18, 1908.